## PROSECUTION FOR MURDER IN THE SECOND DEGREE.

Court of Appeals for Hamilton County.

LEONARD GOINGS v. STATE OF OHIO.

Decided, December 13, 1915.

*Criminal Law—Errors in Charge to Jury in Second Degree Murder Trial—Instruction as to Threats Where no Evidence of Threats Had Been Offered—Plea of Not Guilty Does Not Admit of a Charge on the Subject of Self-Defense—Misconduct by the Prosecuting Attorney.*

1. In a prosecution for murder in the second degree an instruction to the jury, to the effect that threats made by the deceased against the defendant would not justify defendant in killing the deceased, constitute prejudicial error where there is no evidence that any threats were made.

2. A plea of self-defense admits the killing by the defendant but seeks to avoid the legal consequences by pleading and showing justification; and where a defendant does not admit the killing, but stands on his plea of not guilty and challenges the state to prove beyond a reasonable doubt that the killing was committed by him, an instruction to the effect that there was some evidence that the killing was by the defendant, but he claimed he was justified under the doctrine of self-defense, is highly prejudicial since it leaves the jury no option but to find that the killing was the act of the defendant, their task being only to determine whether it was in self-defense, which shifts the burden of proof and compels the defendant to prove his innocence by a preponderance of the evidence.

3. Where the circumstances seem to indicate that the crime was committed by either the prosecuting witness or the accused, the use by the prosecuting attorney of language in his argument to the jury which leaves in their minds the impression that the prosecuting witness had been tried and acquitted of the crime and had no motive to testify otherwise than the truth, leaving them to conclude that the defendant must be the guilty one, is misconduct of a prejudicial character.

*Ed. F. Alexander* and *Jas. B. O'Donnell,* for plaintiff in error.
*John V. Campbell,* Prosecuting Attorney, and *Walter M. Locke,* Assistant Prosecuting Attorney, contra.

GORMAN, J.

The plaintiff in error on July 20th, 1915, was indicted for murder in the second degree by the grand jury of Hamilton county, charged with "unlawfully, purposely and maliciously" killing one James Garner by shooting him with a pistol on May 4, 1914, at 554 George street, in the city of Cincinnati. On July 24, 1915, after trial, he was by a jury found guilty of manslaughter, and on July 26, 1915, was sentenced to the Ohio penitentiary. He has prosecuted error to this court and asks for a reversal of the judgment.

Briefly, the salient facts adduced at the trial, as shown by the record, are as follows: For about three years prior to May 4, 1914, Leonard Goings cohabited with one Violet Anderson, alias Gertrude Thomas, an open and notorious prostitute, in several parts of Cincinnati, and elsewhere. He had left her and gone to Indianapolis about a month or two prior to May 4, 1914, and while he was there she took up her abode in the tenderloin district of Cincinnati at 554 George street. Both Goings and the Anderson woman are colored.

On May 4, 1914, Goings returned to Cincinnati from Indianapolis, and on the same day the Anderson woman heard of his return and sent one of her friends to request Goings to visit her at her room on the second floor of the building No. 554 George street. He went to her room about four o'clock in the afternoon of that day, with Violet's messenger, and after a few minutes the messenger departed, leaving the Anderson woman and Goings alone in the room. These two are the only witnesses as to what occurred with reference to the killing of Garner.

Shortly after Goings arrived at the Anderson woman's room Garner, a large, strong young colored man, appeared at the house and asked two of the inmates on the first floor front of the house how he could get upstairs. He was directed to go to the rear of the house, which faced south on the north side of George street, and he would find the stairway. He walked back perhaps twenty or thirty feet, entered a side door and mounted the stairs which lead to a hallway running north and south on the second floor. He walked south through this hallway, which was dark

and unlighted, to the door of the Anderson woman. He knocked, and she came to the door, opened it, and asked Garner what he wanted. He asked if she did not know him. She said she did not, and ordered him away. He began to curse her and call her vile names and said something about his money. He went downstairs and into the side yard, where he continued to curse the Anderson woman, and she from the window talked back to him. She told him he had better stay down there, but if he must come up, then to come up. This is her statement before the coroner, but on the trial she says Goings told Garner that "if he must come up, to come up." Goings denies having spoken to Garner while in the yard. Garner came up into the hall, and while there was shot by either Goings or the Anderson woman. She admits having thrown two drinking glasses out into the hall at Garner. On the trial she testified that while she was at the door of her room trying to drive Garner away and throwing the glasses at him, Goings passed by her into the hall, saying, "Let me get down to him," and that when Goings got out into the hall she heard something like a slap, followed by a shot. Goings came back into the room and she says she asked him who shot, and he said "I did." She asked if he had shot him (Garner), and Goings said "No." She says she saw Garner come around the house and lean up against the wall, and she then said to Goings "Yes you did." He said, "Did I? What must I do?" and she told him to go to his home in Virginia. She says he told her he would throw the pistol into the vault in the back yard. She did not see Goings have a revolver nor did she see him shoot Garner. Garner died without making any statement.

Goings entered a plea of "Not guilty," and on the witness stand in his own behalf denied that he shot Garner, denied that he had or owned a revolver, and denied most of the Anderson woman's statements. He testified that she shot Garner from her door in the hall while he, Goings, was out in the hall trying to get Garner to go away; that she was very close to Garner when she shot him, and that Garner had struck him, Goings, with a dinner pail and knocked him down, and while he was down, she shot Garner; that she told him, Goings, to go away home so that he could not testify against her.

Goings went away that evening to Virginia, and was not arrested until more than a year afterwards at Dayton, Ohio. After the shooting, the deceased was taken to the city hospital, where he died that night. The police officers that evening searched the vault and fished up a thirty-two caliber revolver with one empty shell and two unexploded cartridges. Goings testified that the revolver belonged to the Anderson woman and was the one with which she shot Garner; that he had often seen it in her bureau drawer. Two other witnesses testified that she told them she had a revolver and would shoot. She was arrested after the shooting, and when questioned by the officers said a man named "Walter" did it. After being confined for quite a while and, as she said, cross-examined by the police and put through either the second or third degree, she said Goings did it.

There appears to be a direct conflict between her testimony and that of Goings, the only two who know what person fired the shot that killed Garner. The circumstances and probabilities appear to us to point as strongly to Violet Anderson as to Goings, as the slayer of Garner. Indeed, we think the probabilities are stronger in favor of the theory that the woman, rather than the man, fired the shot. Each, it is true, was equally interested in throwing the blame on the other; both were persons of bad repute, and each had strong motives for testifying against the other as they did, but a careful consideration of the evidence and circumstances will lead a reasonable person to the conclusion that the state failed to establish the guilt of Goings beyond a reasonable doubt. Assuming that Violet Anderson was entitled to equal credibility with Goings, nevertheless the attending circumstances, if carefully weighed and considered by twelve unbiased and disinterested men, were such that there must have existed in the minds of such a jury a reasonable doubt of Goings' guilt, and if that reasonable doubt had been resolved in his favor the verdict should have been "not guilty."

There are several errors claimed, by counsel for Goings, to have been committed by the court in the charge. In speaking of that provocation which would warrant the jury in finding the

accused guilty of manslaughter rather than murder in the second degree, the court said:

"The provocation to have the effect of alleviating the killing from second degree murder down into manslaughter must have consisted in this case of personal violence done, or attempted to be done by James Garner, nor can the threats which were alleged to have been made by Garner against the defendant be considered as reasonable provocation to reduce the killing from second degree to manslaughter."

This portion of the charge assumes, as we read it, that threats were alleged to have been made against Goings by Garner, and assumes that Goings would not be justified in killing Garner on that account, whereas there is no evidence of Garner having threatened Goings. In this part of the charge we think the court erred to the prejudice of the accused.

In several places in the charge the court assumed that Goings did the shooting; whereas Goings strenuously denied that he did, and there was no witness who testified that he did shoot the deceased. Violet Anderson only testified that *Goings told her he shot,* but did not hit Garner.

The trial court further charged the jury on the plea of self-defense, and while that part of the charge relating to self-defense appears to state correctly the rule of law applicable to self-defense, there was no claim or plea of self-defense made by Goings, nor was there any evidence, to our minds, tending to show a case of self-defense. The plea of self-defense in murder cases admits the killing by the defendant, but seeks to avoid the legal consequences by pleading and showing a justification. There can not properly be a case of self-defense unless the accused admits the killing. This plea is in the nature of a confession and avoidance and, when interposed, the burden of establishing it by a preponderance of the evidence is upon the accused.

In the case under consideration Goings did not admit the killing, but on the contrary was standing upon his plea of not guilty, and challenging the state to prove beyond a reasonable doubt that he fired the shot which killed Garner. Therefore,

when the court charged the jury, as he did, that there was some evidence tending to show that Goings shot Garner as a matter of self-defense, and then proceeded to charge the law of self-defense, it was in substance saying to the jury that Goings admitted the killing of Garner but claimed that he was justified under the doctrine of self-defense, which must be proved by Goings by a preponderance of the evidence. This in effect took from the consideration of the jury the question of whether or not Goings killed Garner, and left no option to the jury but to find as a matter of fact that he did kill Garner. They were, under this charge, required only to find whether or not this killing of Garner was done in self-defense, and on this issue they were told that the burden of proof rested not on the state, but on the defense. Under the evidence it was impossible for the jury to find that Goings killed Garner in self-defense, and, therefore, assuming the killing of Garner to be admitted by Goings by this plea of self-defense, and Goings having adduced no evidence to establish self-defense, the jury were bound to bring in a verdict of either manslaughter or murder in the second degree. Thus, this part of the charge was highly prejudicial to the accused, Goings, as it practically put upon him, in the eyes of the jury the burden of proving his innocence by a preponderance of the evidence.

In the argument to the jury the prosecuting attorney referred to the prosecuting witness, Violet Anderson, and commenting upon her and her testimony, said, among other things:

"Violet Anderson is free; she is clear of this trouble.  *  *  *
But, gentlemen, as their first counsel told you this morning, she is out breathing the free air—you can draw your own conclusion as to what has happened to Violet Anderson."

Counsel for defendant objected to this language, and asked the court to interpose, but the court overruled the objection. The language, we think, was calculated to leave the impression on the jury's minds that the prosecuting witness, Violet Anderson, had been tried and acquitted of the crime for which Goings was undergoing trial, and that she therefore had no motive in testifying to anything but the truth, whereas there was no evi-

dence tending to show that Violet Anderson had been tried or acquitted or that she was not under indictment charged with this crime or complicity in its commission. The jury seeking a victim might well have concluded that if the Anderson woman had been acquitted then Goings must be guilty, inasmuch as the killing of Garner was by either Goings or the woman. If she did not kill Garner, then of necessity Goings did kill him. We think this was prejudicial misconduct on the part of the prosecutor.

There are other errors in the record, but those pointed out are sufficient to require us to reverse the judgment, which is accordingly done.

JONES (E. H.), P. J., and JONES (Oliver B.), J., concur.